**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **T.A.-1, M.A., and I.A.**

**No. 21-0317** (Raleigh County 20-JA-123-B, 20-JA-124-B, 20-JA-125-B)

**MEMORANDUM DECISION**

Petitioner Father T.A.-2, by counsel Latachia N. Miller, appeals the Circuit Court of Raleigh County's August 9, 2021, order terminating his parental, custodial, and guardianship rights to T.A.-1, M.A., and I.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Timothy P. Lupardus, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental, custodial, and guardianship rights because the DHHR did not make reasonable efforts to reunify the family and because the court did not consider any less-restrictive alternatives.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2020, the DHHR filed an abuse and neglect petition alleging that it received two referrals regarding drug use, domestic violence, medical neglect, and lack of adequate food for the children. During an investigation, Child Protective Services ("CPS") spoke with six-year-old M.A. at school, at which time the child was visibly bruised and limping. The child could not describe how the bruising occurred, although he indicated that he was limping because he

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, they will be referred to as T.A.-1 and T.A.-2, respectively, throughout this memorandum decision.

twisted his ankle. However, the child told CPS that petitioner had not taken him to the doctor, despite being aware of the injury. The child also described being "very tired due to . . . [the mother] and [petitioner] fighting all night" and indicated that he was late to school every day because of the parents' altercations. The child disclosed hearing the parents engage in physical altercations. He also told CPS that the parents "spend a lot of time in the bathroom" and would require M.A. to watch his eight-month-old sibling while they remained in the bathroom. The child had not eaten the prior night and disclosed that there was no food in the hotel room where the family lived. CPS then spoke with eleven-year-old T.A.-1, who explained that he had previously lied to CPS at his parents' direction. T.A.-1 disclosed witnessing petitioner and the mother abusing drugs in their hotel bathroom, describing them holding aluminum foil with straws in their mouths to smoke drugs. According to T.A.-1, he witnessed his parents abusing drugs on several occasions and indicated that they would usually remain in the bathroom together for up to two hours at a time. Although T.A.-1 had been staying with his grandparents prior to the petition's filing, he recalled being required to care for his two younger siblings while he was living in the hotel with his family. Following the petition's filing, petitioner waived his preliminary hearing, and the circuit court ordered petitioner to submit to a psychological examination for parental fitness.

At an adjudicatory hearing in November of 2020, petitioner stipulated to the allegations of substance abuse and his arrest for domestic battery. Based on the stipulation, the court adjudicated petitioner of abusing and neglecting the children. The circuit court also granted petitioner's motion for a post-adjudicatory improvement period. In December of 2020, the multidisciplinary team ("MDT") met to develop a case plan. However, petitioner refused to sign the plan as designed because it required that he complete inpatient substance abuse treatment. The MDT then agreed to revise the plan to include outpatient treatment, but the members advised petitioner that he would not later be offered inpatient treatment if he failed to complete the outpatient program. The MDT members also explained to petitioner that he would be required to submit to random drug screens and that failure to comply with these requirements would result in the termination of his rights. Petitioner also agreed to submit to domestic violence therapy. Ultimately, petitioner signed the revised case plan.

By January of 2021, however, petitioner had become noncompliant with the terms and conditions of his case plan and improvement period, and the DHHR filed a motion to terminate petitioner's improvement period and proceed to disposition. As a basis, the DHHR indicated that petitioner failed two drug screens—including one that was positive for methamphetamine, fentanyl, morphine, and other drugs—and missed nine others between October of 2020 and January of 2021. The following month, the court held a review hearing on petitioner's improvement period. Based on the evidence presented, the court found that during the two months petitioner was under an improvement period, his "drug screen results reflect[ed] that . . . [he] continually used illegal drugs, including heroin." Ultimately, the court found that petitioner did not attempt to comply with his case plan and made no progress in the case. As such, the court granted the motion to terminate the improvement period and set the matter for disposition. Following the hearing, petitioner filed a motion for a post-dispositional improvement period. In support of his motion, petitioner indicated that he entered an inpatient substance abuse treatment program in March of 2021, among other factors.

In March of 2021, the circuit court held a dispositional hearing, during which the DHHR presented testimony from a day report director concerning petitioner having missed and failed numerous drug screens throughout his improvement period, thereby demonstrating his noncompliance. This included petitioner's continued abuse of illegal substances while using prescribed methadone. Petitioner also admitted that after entering an inpatient treatment program on March 13, 2021, he left that program roughly ten days later without completing his treatment. As of the dispositional hearing, petitioner was not enrolled in any form of treatment. Petitioner also admitted that since a hearing on February 9, 2021, he missed every drug screen required of him. Finally, petitioner testified that he did not have a permanent residence at the time of the dispositional hearing. Based on this evidence, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. The court also found that termination of petitioner's rights was necessary for the children's best interests. Accordingly, the court terminated petitioner's parental, custodial, and guardianship rights to the children.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in terminating his parental, custodial, and guardianship rights without requiring the DHHR to make reasonable efforts to reunify the family. This argument is fundamentally flawed, however, as the record in no way supports petitioner's assertions. Specifically, petitioner argues that he was making efforts to complete his case plan goals but that "many of the referrals that were needed for him to fully participate were never sent by DHHR." Petitioner also asserts that "no referrals were sent for case plan services." The portions of the appendix to which petitioner cites, however, do not support these assertions. While it is true that one CPS worker testified that she did not personally send any referrals for services, petitioner ignores the fact that multiple CPS personnel worked on petitioner's

---

[2]All parents' parental, custodial, and guardianship rights have been terminated. The permanency plan for T.A.-1 is adoption in a relative's home, while the permanency plan for M.A. and I.A. is adoption together in a separate relative's home.

case and could have provided the necessary referrals. Indeed, petitioner's counsel specifically asked if there was a referral for adult life skills and parenting classes, to which the CPS worker responded, "I don't know. Where I was only covering for [a different CPS employee] while he was on—I don't know if one was sent." Further, when petitioner's counsel asked if a referral for domestic violence treatment was made, the CPS worker indicated that petitioner "had to register at the Day Report Center." Simply put, petitioner cites to no evidence that the DHHR's alleged lack of reasonable efforts resulted in his inability to comply with any services offered below. Further, pursuant to West Virginia Code § 49-4-610(4)(A), "[w]hen any improvement period is granted to a [parent] pursuant to this section, the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." Petitioner had an affirmative duty to initiate and complete the services included in his case plan, yet he failed to do so. Because he cites to no evidence that the DHHR failed to make reasonable efforts to reunify the family, he is entitled to no relief.

Similarly, the record does not support petitioner's assertion that he was making efforts to complete the case plan goals through his participation in substance abuse. As the circuit court found, petitioner was abusing drugs, including heroin, while participating in his outpatient substance abuse program, and the record shows that petitioner left his inpatient substance abuse program after roughly ten days without completing the treatment. While petitioner cites to a DHHR employee's testimony that it is common for parents to fail drug screens early in improvement periods, this testimony does not change the fact that petitioner's continued substance abuse constituted noncompliance with the terms of his case plan. Accordingly, the record does not support his assertion that he was compliant by virtue of his limited participation in substance abuse treatment.

Petitioner also argues that the circuit court erred in ordering that he undergo a parental fitness evaluation but then terminated his rights without receiving the report from that evaluation. In support of this argument, petitioner fails to cite to any authority that would prevent the circuit court from proceeding to disposition without first reviewing the results of an evaluation that it ordered. Petitioner similarly fails to explain how the results of his evaluation could have negated the clear evidence of his noncompliance with his improvement period. Instead, petitioner merely speculates about possible causes for his behavior and asserts that he should have been entitled to additional time for improvement. This argument ignores the fact that West Virginia Code § 49-4-610(7) directs that "[u]pon the motion by any party, the court *shall* terminate any improvement period granted pursuant to this section when the court finds that respondent has failed to fully participate in the terms of the improvement period." (Emphasis added). Because the evidence established that petitioner was not fully participating in his improvement period, as evidenced by his failure to submit to drug screens as directed and his ongoing use of illegal drugs, the court was required to terminate his improvement period upon the DHHR's motion.

Similarly, the evidence at disposition showed that termination was appropriate, given petitioner's noncompliance. Petitioner argues on appeal that the short timeframe from the beginning of his improvement period until termination of his parental, custodial, and guardianship rights was not enough time to complete substance abuse treatment. This argument ignores the fact that after the MDT revised his case plan to permit outpatient substance abuse treatment, petitioner willingly left that program, at which point he enrolled in inpatient substance abuse treatment and

willingly left that program roughly ten days later without completing the same. Tellingly, the record shows that petitioner was not participating in any form of substance abuse treatment at the time of the dispositional hearing. While petitioner speculates about his ability to potentially correct the conditions of abuse and neglect in the future, this Court has routinely held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). As the court below found, the children's best interests required termination, especially in light of petitioner's unwillingness to fully comply with the services offered in order to remedy the conditions of abuse and neglect at issue. Further, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect, given his failure to follow through with the reasonable family case plan, in accordance with West Virginia Code § 49-4-604(d)(3). Under West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental, custodial, and guardianship rights upon such findings. According to petitioner, the court should have imposed a less-restrictive alternative to termination, but he ignores the following direction:

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Again, because the court made the requisite findings, a less-restrictive alternative to termination was not appropriate.

Finally, denial of petitioner's motion for a post-dispositional improvement period as an alternative to termination was appropriate, given that he was unable to establish that he was likely to fully comply. We have explained that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (citation omitted). Additionally, in order to obtain a second improvement period, West Virginia Code § 49-4-610(3)(D) requires a parent to establish that "since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and that "due to that change in circumstances, the [parent] is likely to fully participate in the improvement period." On appeal to this Court, petitioner cites to no evidence that would demonstrate he satisfied this burden. Accordingly, we find no abuse of the circuit court's discretion in denying the motion for a post-dispositional improvement period. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 9, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: October 1, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6